UNITED STATES OF AMERICA
FOR THE DISTRICT OF MASSACHUSETTS

_____
UNITED STATES OF AMERICA           )
                                   )   CRIMINAL NO. 05CR10183-MLW
v.                                 )
                                   )
ARTHUR BURGESS                     )
_____)

The defendant, Arthur Burgess, hereby opposes the Government's Motion to Compel Production of DNA, Finger and Palm Print, and Hair Samples (hereinafter: "the Government's Motion") on the grounds that: (1) the request is overbroad and duplicative; (2) the Government's Motion, unsupported by any affidavit and lacking in specific facts, has failed to meet its burden of establishing probable cause to believe that the items it seeks from the defendant will yield evidence of a crime; and (3) the circumstances of the request provide inadequate safeguards against cross-contamination.  Mr. Burgess asks that before any order requiring him to produce any such materials issues, the government be compelled to (1) produce to defense counsel complete documentation of the chain of custody of each item of evidence sent to the F.B.I. Crime Laboratory and of each extraction of DNA from any such item; (2) the results of all testing conducted to date, in raw data form if no report is available; and (3) complete the testing on all "Q" evidence in its possession and disclose the results to defense counsel, or (4) identify each item of Q evidence, i.e. hair, fiber, print,

and in the case of any item susceptible to DNA testing, divide the item in half and provide one half to defense counsel for testing prior to the production of a DNA sample by Mr. Burgess.

I.   Factual Background

The government has obtained samples of saliva and hair, as well as fingerprints and palm prints, from two of the four defendants in this case. Those defendants' samples have been sent to the F.B.I. Crime Laboratory and apparently tested and compared with DNA extracted from Q evidence seized in connection with this case.[1] The government has not disclosed to defense counsel any information about the testing that has been done so far, as no report is contemplated until all of the defendants' samples are obtained. The government has in its possession an unspecified number of untested items of evidence from which it may or may not be possible to extract DNA.

Against this background, the government has requested Mr. Burgess to provide samples of his saliva, hair, and finger and palm prints. Mr. Burgess has refused to provide the samples, because, among other reasons, the government has refused to first provide any documentation of the existing Q evidence already in its possession, and/or to first conduct the DNA testing from that Q evidence.

---

[1] The Government's Motion expressly mentions only the evidence seized from the 311 Pearl Street apartment on June 16, 2005. However, search warrant materials indicate that evidence was also taken from a blue Dodge Dakota truck and from a white Dodge Ram utility van on June 23, 2005.

II.  <u>Legal Standard</u>

The government now asks this Court to issue an order pursuant to the All Writs Act, 28 U.S.C. § 1651(a), compelling Mr. Burgess to produce DNA samples in the form of oral swabs as well as finger and palm prints and hair samples.

When the government asks a court to compel the production of the defendant's bodily fluids, it is asking for authority to conduct a search of the defendant's person, implicating the Fourth Amendment.  <u>Schmerber v. California</u>, 384 U.S. 757, 770 (1966).  A number of courts have held that the compelled collection of a saliva sample requires probable cause and a valid search warrant.  <u>United States v. Nicolosi</u>, 885 F.Supp. 50 (E.D.N.Y. 1995); <u>State v. Ostroski</u>, 201 Conn. 534 (Conn. 1986); <u>State v. Reeves</u>, 234 Kan. 250 (Kan. 1983); <u>Pyle v. State</u>, 645 P.2d 1390 (Okla.Crim.App.1982).  In order to justify the issuance of a search warrant, the government must submit an affidavit to establish probable cause to believe that the requested search will yield evidence of a crime.  F.R.Crim.P. Rule 41(c), 41(d).

III. <u>Argument</u>

A.  THIS COURT SHOULD DENY THE GOVERNMENT'S MOTION BECAUSE THE GOVERNMENT HAS FAILED TO ESTABLISH BY WAY OF AFFIDAVIT PROBABLE CAUSE TO BELIEVE THAT THE SEARCH OF MR. BURGESS IT SEEKS TO CONDUCT WOULD LIKELY YIELD EVIDENCE OF A CRIME.

Proceeding under the All Writs Act, rather than seeking a search warrant, the government submitted no affidavit in support of its motion, although the motion does cite the June 16

Affidavit of Laurence Travaglia, previously submitted in support of the government's applications for search warrants.

The United States Supreme Court has characterized the All Writs Act, 28 U.S.C. §1651(a), as a "residual source of authority to issue writs that are not otherwise covered by statute." <u>Carlisle v. United States</u>, 517 U.S. 416, 429, 134 L.Ed.2d 613, 116 S.Ct. 1460 (1996). Thus, the Act provides federal courts with the authority to issue writs that were traditionally available at common law. <u>United States v. Sawyer</u>, 239 F.3d 31 (1st Cir. 2001).

The issue at hand, the search of a person for DNA evidence, is governed by other sources of law, including the Fourth Amendment to the United States Constitution and by the Federal Rules of Criminal Procedure applicable to the issuance of search warrants. <u>United States v. Allen</u>, 337 F.Supp. 1041, 1043 (E.D.Pa. 1972). Thus, the All Warrants Act is not the proper vehicle for the authority the government seeks, and it cannot be used to circumvent the need for a particularized showing of probable cause supported by an affidavit. The affidavit cited in the Government's Motion does not address the facts regarding what evidence would likely be obtained if saliva and hair samples or palm prints were produced.

B.  THIS COURT SHOULD DENY THE GOVERNMENT'S MOTION BECAUSE THE GOVERNMENT'S FACTUAL ALLEGATIONS, EVEN IF TRUE, FAIL TO ESTABLISH PROBABLE CAUSE TO BELIEVE THAT THE PRODUCTION OF THE MATERIAL REQUESTED WILL YIELD EVIDENCE OF A CRIME.

The facts section of the Government's Motion consists mainly of a recitation of facts to establish probable cause that the defendants participated in the offense, a point already made by the indictment. It is notable, however, that there is very little reference to Mr. Burgess in the government's factual allegations. In eight pages of facts, there are only three specific allegations concerning Mr. Burgess: (1) that Jason Owens told a cooperating witness that four people, including Mr. Burgess, intended to rob an armored car on April 27, 2005, Government's Motion, p. 1-2; (2) that Owens said, in his post-arrest statement, that he had allowed three people including Burgess to use his apartment in armored car robberies, as he had told Dennis Quirk that the group could use the apartment, Government's Motion, p. 7; and (3) Owens' post-arrest statement also describes a meeting in which Quirk and O'Brien picked up Owens, O'Brien walked away, and Quirk discussed his intent to commit an armed robbery with O'Brien and Burgess, Government's Motion, p. 7.

The facts section of the Government's Motion also contains a lengthy discussion of the volume of cases processed by the DNA-1 unit at the F.B.I. Crime Laboratory and a description of the

5

procedures in place to guard against cross-contamination of samples. The actual protocols, policies and procedures of the laboratory, however, are not attached to the motion and have not been disclosed. Thus, the government's conclusion that "Q samples and K samples are handled in such a way that there is virtually no chance of cross-contamination", Government's Motion, p. 11, is not subject to question or scrutiny.

The volume of cases handled by the F.B.I. lab, while impressive, has little if any meaning in the absence of information about the staffing and funding of the lab. On those issues, the government resorts to adjectives in lieu of numbers or factual detail. In short, there is no factual support for the government's position that the testing of all Q samples prior to the production of the defendant's K sample would cause the DNA-1 Unit's work to "grind to a halt", Government's Brief, p. 11 ¶3.

Another even more important set of numbers missing from the Government's Motion are those that would reveal the volume of Q evidence at issue here. Without informing the defendant or the Court as to how many Q samples it has, the government simply argues that it could not possibly test all such samples prior to production of the defendant's K sample. The motion contains no statement as to how many hairs, finger or palm prints, or other items that contain DNA evidence is presently in the hands of the government, and whether any of them, let alone how many, are

susceptible to DNA testing.  Also missing are any facts concerning the number of items tested and already matched or not matched to either of the two defendants who have provided DNA samples, and what is left that could possibly be tested for a match to Mr. Burgess.

Without any such information, the Government's Motion should be denied as it has failed to establish probable cause to believe that any sample taken from Mr. Burgess would likely produce evidence of a crime.

C.  THIS COURT SHOULD DENY THE GOVERNMENT'S MOTION BECAUSE THE CIRCUMSTANCES IN WHICH THE REQUEST IS MADE LACKS SUFFICIENT SAFEGUARDS AGAINST CROSS-CONTAMINATION OF EVIDENCE.

The only way to truly eliminate the possibility of cross-contamination is to withhold from the government the "known" evidence: the defendant's DNA, until after the Q evidence has been tested.  The undisclosed but allegedly thorough and adequate protocols used at the FBI Crime Laboratory may go a long way toward preventing contamination, but nothing in the Government's Motion establishes an absolute prevention against the cross-contamination of samples.

The government's argument against this condition, reduced to its essentials, is a time and expense argument.  The government has not stated that the number of Q samples in this case is too high to test prior to receipt of Mr. Burgess' sample, nor can it deny that such a process would provide better protection against

7

cross-contamination than the protocols presently in place. Rather, it is saying that if the conditions sought by Mr. Burgess were imposed in all of the cases for which it conducts tests, its present resources would not sufficient.  The defendant respectfully submits that this Court ought not to accept that argument, particularly when it is not substantiated by any facts relating to the quantity of Q evidence remaining at the lab in this case, or any documented facts concerning the lab's resources.

If this Court is inclined against ordering the government to test all of the Q evidence in its possession prior to ordering the production of defendant's DNA, it could order the government to identify all of the Q evidence, divide it in half, and turn half of it over to the defense for testing by defense experts. This would also require the government to provide complete documentation of the chain of custody of each item that may contain DNA evidence, so that each item provided to the defense would be clearly shown to correspond to its other half retained by the government's lab.  This procedure would provide an additional check against cross-contamination, as a defense expert would be able, with certainty, to test the other half of any sample said to "match" the defendant's DNA, with an absolute guarantee that at least that portion of the sample in the custody of the defendant's expert would not have been cross-contaminated.

D.  IN THE EVENT THAT THIS COURT IS INCLINED TO ISSUE ANY
    ORDER COMPELLING THE DEFENDANT TO PRODUCE ANY MATERIAL FOR
    DNA TESTING, THE MATERIAL ORDERED TO BE PRODUCED SHOULD BE
    LIMITED TO ONE SALIVA SAMPLE AND ONE PALM PRINT, AND THIS
    COURT SHOULD SET PRECONDITIONS THAT MUST BE MET BY THE
    GOVERNMENT PRIOR TO PRODUCTION OF THESE ITEMS BY THE
    DEFENDANT.

The Government has asked for samples of saliva and hair from Mr. Burgess, and finger and palm prints, with no explanation as to why it needs more than one source of DNA information. If this Court issues any order for the purpose of DNA sampling, it should be for only one thing: a saliva sample. The addition of a hair sample would provide no additional DNA information apart from that already available from the saliva sample, and its production would therefore serve no legitimate purpose.

The government most likely has Mr. Burgess' fingerprint as a result of processing after his arrest. If a palm print is ordered produced, Mr. Burgess again respectfully requests that the government be required to first produce to defense counsel copies of any palm prints already obtained from any of the evidence in this case. While the government does not specifically address palm prints in its motion, it would appear that they are not processed by the DNA-1 unit.

WHEREFORE, the defendant Arthur Burgess respectfully requests that this Honorable Court DENY the Government's Motion. In the alternative, if the Court is inclined to issue any order

compelling Mr. Burgess to provide any DNA sample or other item, pursuant to the Government's Motion, Mr. Burgess requests that any such order be limited to one saliva sample and one palm print, and further that the following preconditions be met by the government before such samples are taken: (1) the government must provide full documentation concerning the chain of custody of each item of evidence in this case, including within the F.B.I. Crime Laboratory; (2) the government must disclose the results of all DNA testing conducted to date in this case, in raw data form if no report is available, and produce copies of any palm prints already obtained from the evidence;  (3) complete the testing on all Q evidence in its possession and disclose the results to defense counsel, or (4) identify to defense counsel each item of Q evidence, i.e., hair, fiber, print, and produce one half of each such sample to the defense for testing by defense experts, with documentation that identifies each such item as corresponding to that part which remains in the government's possession.

                                        RESPECTFULLY SUBMITTED,

                                        ARTHUR BURGESS
                                        By his Attorney,

                                        /s/Leslie Feldman-Rumpler
                                        Leslie Feldman-Rumpler
                                        Attorney-at-Law
                                        BBO 555792
                                        101 Tremont Street, Ste. 708
                                        Boston, MA  02108
                                        (617) 728-9944