UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.      ) | CRIMINAL NO. 05-0183-MLW |
| ) | |
| MARTIN O'BRIEN and  ) | |
| ARTHUR BURGESS    ) | |

**OPPOSITION TO DEFENDANT MARTIN O'BRIEN'S
MOTION TO COMPEL DISCOVERY**

Defendant Martin O'Brien (the "defendant") has filed a motion (the "Motion") to compel certain discovery in which he has been joined by defendant Arthur Burgess. In particular, the defendant seeks the identity of a woman (the "individual") who was present when one of two consensual recordings were made between defendant Jason Owens and the cooperating witness ("CW") referred to in the complaint and search warrant affidavits. While the defendant refers to her as a witness, the government does not at present intend to call her as a witness at trial. For the reasons that follow, the Motion should be denied.

**BACKGROUND**

The government provides the following summary as context for the Motion and not in an effort to provide a comprehensive recital of the government's evidence.

**General**

This case involves an attempted armored car robbery in the Boston North End on June 16, 2005; a conspiracy to commit armored car robberies that began earlier in 2005; and various firearms

charges relating to those crimes.  A cooperating witness, or "CW," provided information to the FBI in April 2005 about plans to rob an armored car on April 27, 2005 that he had learned of through defendant Jasons Owens and that, according to the CW's information, included Dennis Quirk, Martin O'Brien, Arthur Burgess, and Brian Lacey, and that further included using Jason Owens's residence at 311 Pearl Street in Malden, Massachusetts, as a rendezvous point after the robbery.  The CW told the FBI that Owens had shown him firearms in a black Nike bag to be used in the robbery.  The robbery did not occur on April 27: according to the CW, Owens told him that Quirk had told Owens that morning that one of the participants had gotten cold feet.  The CW also told the FBI on a later occasion that, according to Owens, Quirk and others had been set up on a second occasion to commit an armored car robbery but had aborted this plan when Quirk observed what he thought to be law enforcement vehicles in the area.

On June 16, 2005, at approximately 11:38 a.m., a Loomis Fargo armored car was making a delivery/pickup at the Citizens Bank on Hanover Street in the North End of Boston.  The messenger heard a car revving its engine and heard tires screeching and looked up to see a blue minivan pulling up along side the armored vehicle.  The side door of the minivan vehicle opened and a person, wearing a mask, pointed what appeared to be an AK-47 and said "Get the fuck down."  The messenger ran to a nearby store and drew his weapon.  The messenger came out of the store and saw

the minivan pulling away from the location. No money or property was taken in this attempted robbery.

Upon learning of the attempted armored car robbery, and in light of the information previously developed, agents proceeded to the vicinity of 311 Pearl Street in Malden. Upon arriving, Special Agent April Haddock observed a man wearing a dark hooded jacket, dark ball cap, and blue jeans standing outside of 311 Pearl Street looking around in all directions. She recognized him to be defendant O'Brien. After a few minutes, he entered 311 Pearl Street. Shortly thereafter, someone wearing a white hat, white shirt, and shorts, was seen exiting the house. A chase ensued involving FBI special agents and the Malden Police. The individual was apprehended in a nearby MBTA station and was identified as defendant Dennis Quirk.

The FBI obtained a search warrant for 311 Pearl Street during the evening of June 16, 2005. No people were present when the search was conducted. Pursuant to the search, the FBI recovered from Owens's bedroom, among other things, firearms consistent with those described by the CW, including an AK-47 assault rifle consistent with that used in the robbery attempt, in a black Nike bag that also was consistent with the description provided by the CW.

### The Recording

The recording in question was made on May 3, 2005 at 311 Pearl Street. The principal speakers were defendant Jason Owens

and the CW. Also present was the individual, whose voice appears on the recording at times but does not appear during the portion of the conversation between Owens and the CW that is described in the complaint and search warrant affidavits.

The defendant maintains that portions of the recording are not audible, and that portions of the recording that are audible are inconsistent with statements regarding the conversations in the affidavits submitted in support of the complaints and search warrant in this case.

The government agrees that there are portions of the conversation that are obscured, apparently by the rustling of clothing. The government disagrees, however, that the audible portions of the recording are inconsistent with the description of the conversation in the affidavits. To the contrary, the government believes that the substance of what is related in the affidavits appears in the audible portions of the tape. The government also does not believe that the descriptions of this conversation are material in any event. In light of this, and for the other reasons set forth below, the defendant's motion seeking the identity of the individual whose voice appears intermittently on the May 3 tape should be denied.

### ARGUMENT

The defendant seeks the identify of the individual whose voice appears in places on the May 3 tape. For the several reasons that follow, the Motion should be denied.

First, absent a showing that the information is exculpatory, there is nothing either in the Constitution or in Rule 16 that entitles the defendant to the names even of witnesses, let alone to the identities of persons whom the government does not intend to call at trial. See, e.g., United States v. Moore, 936 F.2d 1508, 1514-15 (7th Cir. 1991); Fed. R. Crim. P. 16. Here, while the government disagrees with the defendant that anything in the complaint and search warrant affidavits is materially at odds with the May 3 recording, the defendant has not provided any reason to believe that his version of the recording is exculpatory: at most, the defendant has suggested that the recording is not *in*culpatory, not that it is affirmatively *ex*culpatory. Further, without something more than conclusory claims that the name of this individual should be revealed "in the interests of justice" or "to get a fair and impartial trial," see Motion at 1, the defendant has failed to make a prima facie showing of materiality that arguably might otherwise entitle him to this information. See United States v. Carrasquillo-Plaza, 873 F.2d 10, 12-13 (1st Cir. 1989).[1]

It may be that the defendant seeks the identity of the individual because he believes she may support his claim that the

---

[1] The defendant correctly notes that the government has declined to make disclosures in this case under Local Rule 116.6(A). The government does not at this time plan to call the individual in question as a witness, however, so the Local Rules regarding disclosure of certain information are not implicated with respect to the individual.

taped conversation is not consistent with the descriptions of the conversation in the search warrant affidavit, and that this somehow entitles the defendant to her identity. But a claim that a portion of a search warrant affidavit is inaccurate rarely provides a basis for discovery. The Supreme Court has recognized that there is a presumption of validity with respect to an affidavit supporting a search warrant. Franks v. Delaware, 438 U.S. 154, 171 (1978). The Court further stated that, in order to show entitlement to an evidentiary hearing as to whether a warrant affidavit contains deliberately or recklessly false statements,

> the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

438 U.S. at 171-72.

Implicit in the Court's treatment of the issue is the notion that a criminal defendant is not entitled automatically to

discovery regarding matters contained in search warrant affidavits; otherwise, the fishing expedition that the Supreme Court foreclosed at the hearing stage would simply be pushed back to the discovery stage, and the presumption of validity of search warrants would have little force.  See also United States v. Higgins, 995 F.2d 1 & 4 n. 5 (1st Cir. 1993).[2]

Here, the effort to obtain the identity of the individual falters at many levels.  First, this defendant has not shown he has any standing to contest the search warrant in any event: it was not his apartment, nor is there any evidence that he stayed in the apartment.  Second, Special Agent Travaglia did not say in the search warrant affidavit that he spoke to the female about the substance of the conversation but rather that he listened to the tape, and the recording either does or does not reflect what

---

[2] Higgins, while recognizing that some defendants who cannot make the full-fledged showing necessary to obtain a Franks hearing may be able to get discovery in aid of such a showing, plainly requires a defendant not simply to allege that an affidavit contains false statements but to make some affirmative showing that such false statements exist and that discovery will aid the defendant in showing that they exist.  Indeed, the Higgins court explicitly observed that, not only did the defendant's offers of proof in that case fail to identify any materially false statements in the search warrant affidavit, but the defendant also failed to provide sworn statements of witnesses, or explain the absence of such, as required by Franks.  Higgins, 995 F.2d at 4 n. 5.  Thus, while Higgins recognizes that a defendant may not be in a position to make the full-fledged showing that Franks requires in order to trigger an entitlement to a hearing, a defendant must still provide sworn statements or their equivalent that identify the affidavit statements that a defendant believes are false and an explanation of why certain discovery would assist the defendant in showing that they are false.

Special Agent Travaglia believes he heard.  Third, the government believes that the tape does contain the substance of what Special Agent Travaglia related, and thus there is no basis for believing the affidavit to be inaccurate.  Fourth, and in any event, the description of the May 3 conversation is a small part of the information provided in support of the search warrant.  Because one could simply excise that small part of the affidavit and still have abundant probable cause supporting the warrant, the defendant would not be entitled to a <u>Franks</u> hearing on this issue, much less discovery in aid of a <u>Franks</u> hearing.  See <u>Franks</u>, 438 U.S. at 171 (no hearing warranted where sufficient content in search warrant affidavit supports probable cause when allegedly inaccurate material is set aside).

Accordingly, because the defendant has not demonstrated that he is entitled to the identity of the individual, the Motion should be denied.  In further support of the government's opposition, the government submits herewith for the Court's in camera review, under Local Rules 116.6(A) and 7.2, additional material.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion seeking disclosure of the identity of the individual whose voice appears

intermittently on the May 3 recording should be denied.

                                    Respectfully submitted,
                                    MICHAEL J. SULLIVAN
                                    United States Attorney

                          By:  /s/ Robert E. Richardson
                                    ROBERT E. RICHARDSON
                                    Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

    I, Robert E. Richardson, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 28, 2006.

                                    /s/Robert E. Richardson
                                    ROBERT E. RICHARDSON